UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
DONALD ORR,

                            Petitioner,

         -against-

WILLIAM HULIHAN, Superintendent,
Mid-State Correctional Facility,

                          Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PRO SE

11 Civ. 0501 (RMB)(THK)

**REPORT AND RECOMMENDATION**

**TO: HON. RICHARD M. BERMAN, United States District Judge.**
**FROM: THEODORE H. KATZ, United States Magistrate Judge.**

This habeas corpus proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (c) and Rule 72.1(d) of the Local Civil Rules of the Southern District of New York. Petitioner Donald Orr was convicted, after a jury trial in New York Supreme Court, New York County, of one count of Criminal Sale of a Controlled Substance in the Fifth Degree. See N.Y. Penal Law § 220.31 (McKinney 2011). Petitioner was sentenced as a second felony drug offender to a term of three years' imprisonment, to be followed by one and a half years of post-release supervision. Petitioner is presently incarcerated at Mid-State Correctional Facility in Marcy, New York.

Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, claiming that (1) the New York state trial court erred in denying Petitioner's challenge to the People's use of peremptory

1

COPIES MAILED
TO COUNSEL OF RECORD ON _1/23/12_

jury challenges by misapplying <u>Batson v. Kentucky</u>, 476 U.S. 79, 85, 106 S. Ct. 1712, 12716-17 (1986), and (2) the sentence of three years should be reduced in the interests of justice due to Petitioner's age,[1] deteriorating health,[2] and the relatively low-level nature of his offense.

For the reasons that follow, the Court respectfully recommends that the Petition be denied and Petitioner's claims be dismissed with prejudice.

**BACKGROUND**

## I. **Factual Background**

Petitioner's conviction arises from the sale of a controlled substance on March 13, 2008, in the proximity of the Aladdin Hotel on 317 West 45th Street in Manhattan.  At around 3:30 p.m., Petitioner was approached by Undercover Officer 1990 ("UC 1990") at the Port Authority Bus Terminal in Manhattan. (<u>See</u> Tr. at 360, 498-502.)  Following a brief conversation about painkillers (<u>see</u> <u>id.</u> at 360, 502), Petitioner and UC 1990 walked towards the Aladdin Hotel. Petitioner entered the hotel while UC 1990 waited outside (<u>see</u> <u>id.</u> at 364, 504-05).

---

[1] Petitioner will turn 64 on Dec. 25, 2012. (<u>See</u> Trial Transcript, dated Dec. 4, 2008 ("Tr."), at  493.)

[2] Petitioner was hospitalized several times and has been suffering from hepatitis C and high blood pressure. (<u>See</u> <u>id.</u> at 497-98.)

Subsequently, Petitioner left the hotel and handed UC 1990 a controlled substance. (See id. at 365-66, 506-07.) Petitioner contended that he gave UC 1990 the painkillers "because she kept on aggravating me about the pills... [and I was] so angry [from UC 1990's persistence that] I didn't think about it. I wanted to be left alone." (Id. at 507.) UC 1990 testified that Petitioner went to the Aladdin Hotel to "get me pills" (id. at 363-64), and had a keen interest in concluding the sale (see id. at 364, 366).

UC 1990 handed Petitioner thirty dollars of pre-marked buy money. (See id. at 366, 507.) Following the sale, Petitioner and UC 1990 went separate ways. (See id. at 367, 507.) Petitioner was arrested shortly thereafter on the northwest corner of West 45 Street and Eighth Avenue. (See id. at 367, 508.)

## II. **Procedural Background**

Jury selection for Petitioner's trial was held in two rounds. Twenty potential jurors were present in the first round. (See id. at 23-24.) These included Edianis Aquino, Anthony Ortega, Janette Scott, and Karina Mota. (See id. at 53-55.) Aquino lived in Harlem with her grandmother and uncle. (See id. at 72-73.) She was unemployed but had worked at Charlotte Reus. (See id. at 72.) When questioned by the court, she revealed that her brother had been arrested in September 2008 on a gun-related charge. (See id. at 66.) At the time of the jury selection, her brother was in a

3

juvenile detention facility awaiting trial in Family Court. (See id. at 66-67.) Aquino stated that her brother's prosecution would not affect her ability to serve as a juror. (See id. at 67.)

Anthony Ortega was unemployed and living in lower Manhattan with his grandmother. (See id. at 80-81.) Janette Scott worked as a software engineer and lived on the East Side of Manhattan with her husband. (See id. at 88-89.) Karina Mota worked at a Staples Copy Center and lived in Inwood with her mother. (See id. at 89-90.)

From the first round of jurors, Petitioner exercised eight peremptory challenges, while the People exercised peremptory challenges against Aquino, Ortega, Scott, and Mota. (See id. at 152, 163.)

In the second round of jury selection, the court presented twenty-four prospective jurors. This group included Milagros Crespo, Kim Lettley, and Earl Cohen. (See id. at 175-76.) Milagros Crespo had attended college and had work experience in childcare, but was unemployed. (See id. at 210.) She lived in Washington Heights. (See id.) When questioned, she disclosed that her brother had been recently arrested for assault in New Hampshire. (See id. at 202.) Kim Lettley was an account executive for an office equipment company who lived alone in Harlem. (See id. at 211.) She recounted an unpleasant experience in prior dealings with the

4

police. Specifically, Lettley once reported a theft to a policeman who did not assist her, but instead "got in his car and left." (Id. at 196.) Lettley stated that this experience would not influence her judgment as a juror. (See id. at 197.) Lettley also revealed that her cousin was convicted of murder and was currently incarcerated, and her nephew was in police custody. (See id. at 201-02.) Earl Cohen was an unemployed data entry specialist. He was a high school graduate living on the Upper West Side. (See id. at 221.) Cohen had previously served on a jury that reached a verdict in a robbery case. (See id. at 182-83.)

In the second round, the court granted Petitioner's for cause challenges against three panelists. The People used peremptory challenges against Crespo and Lettley. (See id. at 256-57.)

At this point, Petitioner's counsel raised a Batson challenge alleging that the People improperly used their peremptory challenges to exclude Crespo and Lettley, a Hispanic woman and an African-American woman, respectively. (See id. at 256-57.) Petitioner alleged that, following the first round of jury selection, "the Prosecutor struck every black and Hispanic person, except for the Hispanic man" that Petitioner's attorney struck out. (Id. at 258.) As such, "no black person was left, and no one without a college education." (Id.) Since Petitioner is an African-American man without a college education, he alleged that

5

he was not being tried by a jury of his peers. (<u>See id.</u>)  The court held that there was no "right to a jury of non-college educated people because [the defendant] is not educated." (<u>Id.</u> at 258-59.) Petitioner responded by confining the <u>Batson</u> challenge to the recognized discriminatory categories of race or ethnic origin. (<u>See id.</u> at 259.)  Petitioner asserted that as a consequence of the People's peremptory challenges there were no "black or Hispanic" jurors left. (<u>Id.</u>)  Petitioner was asked to substantiate his allegations, to which he responded that in both rounds of jury selection, all of the People's peremptory strikes were used against African-Americans or Hispanics.  (<u>See id.</u>)

The court concluded that it did not see a pattern in the People's strikes. The court highlighted how the People had not challenged three other African-American panelists in the second round (<u>see id.</u> at 260) and ruled that the People were not striking jurors "solely on account of race" (<u>id.</u>).

The challenge was renewed by Petitioner in the guise of an exclusion of Hispanic jurors. (<u>See id.</u>)  The court tallied up the People's peremptory strikes against Aquino, Ortega, Mota, and Crespo, and concluded that, "because all of those peremptory challenges were against Hispanic people," this sufficed to make a prima facie showing of discriminatory intent. (<u>Id.</u> at 261-62.)

6

The prosecutor explained that Crespo had recently experienced her brother's arrest in an assault case (see id.), and Lettley had "a run-in where she was mugged ... and the police didn't do anything." (Id.)  The prosecutor believed that these incidents could influence the judgment of the two jurors. (See id.)  The court invited defense counsel to respond to the explanations offered by the prosecutor, and to substantiate his assertion that these were not legitimate justifications, but "pretextual [explanations] for discrimination." (Id.)  Defense counsel asserted that the reasons were pretextual because Lettley had assured the court in questioning that she would not let her past experience influence her judgment as a juror, while Crespo was "not asked anything further" regarding her brother's arrest. (Id. at 263-63)  The court rejected Petitioner's response, finding that "the people have provided race neutral reasons, [and] they are not pretextual." (Id. at 263.)

The People subsequently used peremptory challenges against jurors McInerne, Hornbaker, Crabill, and Cohen. (See id. at 263-5.)  Defense counsel renewed his Batson challenge with respect to panelist Cohen (see id. at 265-66), arguing that "one black juror [was struck in the first round], and this is now another black juror struck." (Id. at 266.)[3]  The court denied Petitioner's third

---

[3] Petitioner substantiated his challenge affirming that Cohen was the only African-American panelist left among the remaining

7

<u>Batson</u> challenge on the ground that Petitioner failed to point out sufficient facts to establish a <u>prima facie</u> case of race discrimination. (<u>See</u> <u>id.</u> at 268.) No objection was raised by Petitioner's counsel and the court proceeded with the selection of the remaining jurors. (<u>See</u> <u>id.</u>) Defense counsel did not raise further objections before the jury was sworn, or at a later time in the course of the trial. (<u>See</u> <u>id.</u> at 273.) The jury that ultimately convicted Petitioner included two Caucasians (Adams and Volkmann), three African-Americans (Chimilio, Kreider, and Walker), one Hispanic person (Vidal), and six people of unspecified race (Chin, Kwok, Delacruz, Jackson, Cipollone and Weinstein). Of the three alternate jurors, one was African-American (Webb), and two were of unspecified race (Winesn and Kitchanskwon).

## III. **Procedural History**

On December 8, 2008, the jury convicted Petitioner of Fifth Degree Sale of a Controlled Substance. Petitioner was adjudicated a second felony offender because of a previous conviction for a violent felony. On December 22, 2008, Petitioner was sentenced to a term of three years' imprisonment to be followed by one and a half years of post-release supervision.

---

panelists, which he later corrected as meaning Cohen was the only African-American panelist left among jurors ten through seventeen from the second round of jury selection. (<u>See</u> <u>id.</u> at 267-68.)

On direct appeal to the New York Appellate Division, First Department, Petitioner claimed that the trial court erred in denying Petitioner's <u>Batson</u> challenge by (1) failing to require the prosecution to explain its challenges to four out of the six African-American and Hispanic jurors who were struck by the prosecution (Aquino, Ortega, Scott, and Mota); (2) crediting the pretextual reasons offered by the prosecution for striking potential jurors Crespo and Lettley; and (3) failing to require the prosecution to explain its final peremptory challenge against an African-American juror (Cohen). Petitioner also claimed that his sentence should be reduced in the interests of justice, given his age, deteriorating health, and the relatively low level nature of his offense.

Petitioner's conviction was unanimously affirmed. <u>See</u> <u>People v. Orr</u>, 73 A.D.3d 596, 902 N.Y.S.2d 513 (1st Dep't 2010). The Appellate Division held that Petitioner had failed to preserve his claim concerning the People's alleged failure to explain the four first round challenges (Aquino, Ortega, Scott, and Mota). <u>See</u> <u>id.</u> at 596, 902 N.Y.S.2d at 514. The court declined to review the merits of the claim in the interests of justice, noting that "it was incumbent on petitioner to call his claims to the court's attention at a time when the error complained of could readily have been corrected." <u>Id.</u> at 596-97, 902 N.Y.S.2d at 514.

9

The Appellate Division also held that Petitioner had failed to preserve his claim concerning the prosecution's explanations for the Lettley and Crespo challenges. See id. In considering the trial record, the court held that the reasons advanced by the prosecution were not pretextual and stressed the great degree of deference awarded to a determination of the trial court. See id.

The Appellate Division also held that the trial court had properly denied Petitioner's third Batson challenge with regard to the prosecutor's peremptory challenge to juror Cohen. See id. at 597, 902 N.Y.S.2d at 515. The court had previously established the absence of a prima facie case of race discrimination in the prosecutor's conduct, and Petitioner had not produced "evidence sufficient to permit the trial judge to draw an inference that discrimination had occurred." Id.

Petitioner sought leave to appeal to the New York Court of Appeals on June 16, 2010. On June 19, 2010, Petitioner submitted a supplemental letter asking the court to specifically review the legal standards necessary for the preservation of a Batson challenge. On October 25, 2010, leave to appeal was denied. See People v. Orr, 15 N.Y.3d 894, 912 N.Y.S.2d 582 (2010).

Petitioner filed the instant Petition on January 18, 2011.

### DISCUSSION

In his Petition, Petitioner asserts that (1) the trial court

10

violated the Batson procedures by failing to require the People to explain four of six peremptory challenges used against African-American and Hispanic jurors, and, more than that, by failing to comply with the duty to inquire into the prosecution's subsequent use of a peremptory challenge, regardless of whether Petitioner lodged a second objection to the challenge; and (2) his sentence should be reduced in the interests of justice. Respondent argues that Petitioner's Batson claim is procedurally barred pursuant to an adequate and independent state law rule, and is unpreserved for review. Respondent further argues that the excessive punishment claim is unpreserved for review because it was not exhausted at the state level and, in any event, is meritless.

## I. AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to

that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000); accord Harrington v. Richter, -- U.S. --, 131 S. Ct. 770, 785 (2011); Bennett v. Miller, 419 Fed. App'x 18, 20 (2d Cir. 2011). The phrase, "clearly established Federal law," limits the law governing a habeas Petitioner's claims "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at 412, 120 S. Ct. at 1523).

"The 'unreasonable application' standard is independent of the 'contrary to' standard . . . [and] means more than simply an 'erroneous' or 'incorrect' application [of federal law]." Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (citing Williams, 529 U.S. at 410, 120 S. Ct. at 1522). A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. See Williams, 529 U.S. at 413, 120 S. Ct at 1523.

The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or

incorrect, but, rather, whether it was "objectively unreasonable."
See id. at 408-10, 120 S. Ct. at 1521; Aparicio v. Artuz, 269 F.3d
78, 94 (2d Cir. 2001) ("[A] federal habeas court is not empowered
to grant the writ just because, in its independent judgment, it
would have decided the federal law question differently. The state
court's application must reflect some additional increment of
incorrectness such that it may be said to be unreasonable.").

Moreover, under AEDPA, "a determination of a factual issue
made by a State court shall be presumed to be correct. The
[Petitioner] shall have the burden of rebutting the presumption of
correctness by clear and convincing evidence." 28 U.S.C. §
2254(e)(1). A state court's findings "will not be overturned on
factual grounds unless objectively unreasonable in light of the
evidence presented in the state-court proceeding." Miller-El v.
Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003)
(citations omitted).

## II. **Validity of the Batson Claim**

### A. Governing Law

"More than a century ago, the [Supreme] Court decided that the
State denies a black defendant equal protection of the laws when it
puts him on trial before a jury from which members of his race have
been purposefully excluded." Batson v. Kenntucky, 476 U.S. 79, 85,
106 S. Ct. 1712, 1716 (1986) (citing Strauder v. West Virginia, 100

13

U.S. 303, 10 Otto 303 (1880)). In Batson, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from excluding prospective jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Id. at 89, 106 S. Ct. at 1719. The Court established a three-step burden-shifting framework for the evidentiary inquiry into whether a peremptory challenge is race-based.

First, the party challenging a peremptory strike must make a prima facie showing that the nonmoving party's peremptory challenge is based on race (a prima facie case of discrimination). See id. at 96-97, 106 S. Ct. at 1723; Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770 (1995). The burden then shifts to the proponent of the strike to assert a race-neutral reason for the peremptory challenge. Batson, 476 U.S. at 97-98, 106 S. Ct. at 1723-24. The nonmoving party's burden at step two is very low; although a race-neutral reason must be given, it need not be persuasive or even plausible. See Purkett, 514 U.S. at 768, 115 S. Ct. at 1771. ("The second step of this process does not demand an explanation that is persuasive, or even plausible."). Finally, the moving party has the burden of showing by a preponderance of the evidence that the

peremptory challenge at issue was based on race. Batson, 476 U.S. at 98, 106 S. Ct. at 1723.

Throughout the three Batson steps, the burden remains with the moving party.  "It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." Purkett, 514 U.S. at 768, 115 S. Ct. at 1771 (internal citations omitted).  Typically, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.  Because the evidence on this issue is often vague or ambiguous, the best evidence often will be the demeanor of the attorney who exercises the challenge. See Wainwright v. Witt, 469 U.S. 412, 428, 105 S. Ct. 844, 854 (1985).  Evaluation of the attorney's credibility lies "peculiarly within a trial judge's province." Id.  In fact, this determination is a finding of fact, which is entitled to great deference by the reviewing court. See Felker v. Jackson, -- U.S. --, 131 S. Ct. 1305, 1307 (2011); Hernandez v. New York, 500 U.S. 352, 364-66, 111 S. Ct. 1859, 1869-70 (1991); Purkett, 514 U.S. at 769, 115 S. Ct. at 1771 ("In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are 'not fairly supported by the

record.'")(citation omitted); <u>United States v. Douglas</u>, 525 F.3d 225, 239 (2d Cir. 2008) ("Since 'a finding [as to whether there was] intentional discrimination is a finding of fact,' and 'the trial court findings in . . . this context . . . largely will turn on evaluation of credibility,' the trial court's finding as to whether the prosecutor's reason was race-neutral may be overturned only if that finding is clearly erroneous.") (quoting <u>Hernandez v. New York</u>, 500 U.S. 352, 364, 111 S. Ct. 1859, 1869 (1991)); <u>see generally</u> 28 U.S.C. §§ 2254(d)(2), (e)(1).

### B. <u>Batson</u> was correctly applied

First, step one of the <u>Batson</u> analysis is not at issue here, as the trial court found a <u>prima facie</u> case of discrimination with respect to Hispanic jurors. (<u>See</u> Tr. at 261-62.) Moreover, a <u>prima facie</u> case of discriminatory intent becomes irrelevant to the analysis of a peremptory challenge once the trial court proceeds to the second and third steps, as it did here. <u>See</u> <u>Hernandez</u>, 500 U.S. at 359, 111 S. Ct. at 1859. The second step of the <u>Batson</u> inquiry focuses on whether the prosecution offers race neutral explanations for the peremptory strikes. The prosecution must offer explanations that are more than simple denials of discrimination. <u>Batson</u>, 476 U.S. at 97-98.

Here, in explaining its peremptory strikes, the prosecution referred to statements made by Crespo and Lettley during voir

16

dire.[4]   Crespo stated that her brother had been recently arrested for an assault, and Lettley recollected  an unpleasant experience of  past  dealings  with  the  police.  (See  Tr.  at  263.)    The prosecution  thus  met  its  burden  by  articulating  distinct race-neutral reasons for striking Crespo and Lettley. See Green v. Travis, 414 F.3d 288, 300-01 (2d Cir. 2005) (avoidance of jurors whose family members had either been arrested or undergone negative experiences  with  the  police  is  race-neutral  explanation  for peremptory challenges); Jordan v. Lefevre, 206 F.3d 196, 200 (2d Cir. 2000) (negative experiences with law enforcement is a race-neutral basis for peremptory challenge).

The trial court considered the credibility of the explanations offered  by  the  prosecution,  and,  after  allowing  Petitioner  to respond, determined that the challenge to Crespo and Lettley was not  based  on  their  race.  (See  Tr.  at  262-63.)    Petitioner  has provided  no  basis  for  this  Court  to  reject  the  trial  court's findings as clearly erroneous. See Watson v. Ricks, 427 Fed. App'x 60, 61 (2d Cir. 2011) ("When a state trial court's Batson ruling is challenged  under  § 2254,  our  review  is  further  limited  by  the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

---

[4]  No explanation was actually required for the challenge to Lettley, as she is an African-American woman and the trial court had already determined that there was no prima facie case of discrimination against African-Americans. (See Resp't's Mem. at 28.)

17

under which we will not identify constitutional error unless the record 'compel[s] the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral explanations.'" (quoting <u>Rice v. Collins</u>, 546 U.S. 333, 341, 126 S. Ct. 969, 972 (2006)).  The trial court's <u>Batson</u> ruling is supported by the record, and, therefore, Petitioner's <u>Batson</u> claim with regard to prospective jurors Crespo and Lettley fails.

Petitioner also claims that the trial court violated <u>Batson</u> by not finding a <u>prima facie</u> case of discrimination when the prosecutor used a peremptory challenge against an African-American juror, Cohen.  However, in response to an earlier objection, the court had found that Petitioner had failed to establish a <u>prima facie</u> case of discrimination against African-American jurors because the prosecutor had failed to strike three African-American jurors. (<u>See</u> Tr. at 260.)  At that point, Petitioner did not object to the ruling, indicating that Petitioner had abandoned his claim of discrimination against African-Americans. (<u>See</u> <u>id.</u> ("If that is your ruling Judge, then that is your ruling.").)  In fact, when the challenge to Cohen was lodged, the court reiterated that three African-Americans remained on the jury and no <u>prima facie</u> case of discrimination had been demonstrated. (<u>See</u> Tr. at 266-68.)[5]

---

[5] Another African-American remained in the jury pool and was eventually seated as an alternate juror. (<u>See</u> Resp't's Mem. at 31.)

18

Defense counsel was only able to point to the fact that out of potential jurors ten through seventeen, Mr. Cohen was the only African-American. (See id. at 267-68.)   The Appellate Division found that "[t]he court properly denied defendant's subsequent Batson application . . . [because it] had already found the absence of discrimination, and defendant did not produce 'evidence sufficient to permit the trial judge to draw an inference that discrimination had occurred.'" People v. Orr, 73 A.D.3d 596, 597, 902 N.Y.S.2d 513, 515 (1st Dep't 2010) (citing Johnson v. California, 545 U.S. 162, 170, 125 S. Ct. 241, 247 (2005)). Petitioner has failed to demonstrate that this conclusion was an unreasonable application of clearly established federal law. See Batson, 476 U.S. at 96-97, 106 S. Ct. at 1723 ("In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. . . . We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a

19

prima facie case of discrimination against black jurors.").

Accordingly, Petitioner's <u>Batson</u> claim with respect to potential juror Cohen should be dismissed.

## C. The Remaining <u>Batson</u> Claim is Forfeited and Procedurally Defaulted

Petitioner's remaining and primary <u>Batson</u> claim is that after the trial court found a <u>prima facie</u> case of discrimination against Hispanic jurors, it never required the prosecution to offer race-neutral explanations for its challenge to four out of six potential jurors — Aquino, Ortega, Scott, and Mota.  After the prosecutor offered explanations for his challenges to two jurors, the court ruled on them and explanations were never offered for the four other jurors. (<u>See</u> Tr. at 260-62.)  This omission was never brought to the trial court's attention, and the Appellate Division declined to address the claim on its merits because it found that Petitioner had failed to preserve any claim of error with respect to these peremptory challenges.  <u>See</u> <u>People v. Orr</u>, 73 A.D.3d at 596, 902 N.Y.S.2d at 514.

As an initial matter, by failing to bring this omission to the trial court's attention, Petitioner forfeited this claim under federal law. <u>See</u> <u>Garraway v. Phillips</u>, 591 F.3d 72, 76 (2d Cir. 2010) ("We hold that, by failing to advise the prosecutor or the court that explanations were offered as to fewer than all of

20

several challenged strikes, the defendant has forfeited his <u>Batson</u> claim.").

In addition, the claim is procedurally defaulted under New York law, and a state procedural default generally bars a federal court from reviewing the merits of a habeas claim. <u>See</u> <u>Wainwright v.</u> <u>Sykes</u>, 433 U.S. 72, 86-87, 97 S. Ct. 2497, 2506 (1977). Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S. Ct. 2546, 2253-54 (1991)); <u>accord</u> <u>Jones v. Stinson</u>, 229 F.3d 112, 117 (2d Cir. 2000). An adequate and independent state law ground bars federal habeas review irrespective of whether it is substantive or procedural. <u>See</u> <u>Garvey v. Duncan</u>, 485 F.3d 709, 713 (2d Cir. 2007).

A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" <u>Levine v. Comm'r of</u> <u>Corr. Servs.</u>, 44 F.3d 121, 126 (2d Cir.1995) (quoting <u>Harris v.</u> <u>Reed</u>, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule

is "exorbitant." <u>Lee v. Kemna</u>, 534 U.S. 362, 376, 122 S. Ct. 877, 885 (2002).

New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling ... or at any subsequent time when the [trial] court had an opportunity of effectively changing the [ruling]." N.Y. Crim. Proc. Law § 470.05(2)(McKinney 2011). This rule has been interpreted by New York courts to require, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." <u>People v. Luperon</u>, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 738-39 (1995); <u>see also</u> <u>People v. Hicks</u>, 6 N.Y.3d 737, 739, 810 N.Y.S.2d 396, 398 (2005). A "general objection is not sufficient," because, as "New York's highest courts uniformly instruct," to preserve a claim, a defendant must "specifically focus on the alleged error." <u>Garvey v. Duncan</u>, 485 F.3d 709, 714 (2d Cir. 2007) (collecting state court authority).

The Appellate Division applied the contemporaneous objection rule when it found that Petitioner had failed to preserve any claim of error as to the trial court's failure to require the prosecution to justify the peremptory strikes against four panelists. <u>See</u>

People v. Orr, 73 A.D.3d at 596, 902 N.Y.S.2d at 514.   The
Appellate Division explained, "Defendant argues that although his
application under Batson v. Kentucky, [476 U.S. 79, 106 S. Ct. 1712
(1986)] applied to four panelists from the first round of jury
selection as well as two panelists from the second, the prosecutor
only gave reasons for peremptorily challenging the latter two.
Defendant failed to preserve this claim . . .  and we decline to
review it in the interest of justice. Regardless of whether
defendant had included all six panelists in his Batson application,
when the prosecutor only addressed two of them, it was incumbent on
defendant to call this to the court's attention at a time when the
error complained of could readily have been corrected.") (internal
citations and quotation marks omitted).   This Court has no
authority to question the state's application of its own procedural
rule under these circumstances. See Cotto v. Herbert, 331 F.3d 217,
247 (2d Cir. 2003) ("Our task is not to determine whether [the
state court] ruling was correct, but to determine its adequacy to
preclude federal habeas review."). Accordingly, we conclude that
the Appellate Division's express reliance on the state's
contemporaneous objection rule in rejecting Petitioner's appeal
constitutes an "independent" state law ground for that decision.

The only question left is whether that independent state law
ground is "adequate" to preclude further review of the federal

23

claim. See Whitley v. Ercole, 642 F.3d 278, 286-87 (2d Cir. 2011).

"'[T]he adequacy of state procedural bars to the assertion of federal questions,' we have recognized, is not within the State's prerogative finally to decide; rather, adequacy 'is itself a federal question.'" Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Douglas v. Alabama, 380 U.S. 415, 422, 85 S. Ct. 1074, 1078 (1965)).   Generally, a state ground for a decision will be deemed adequate to preclude habeas review of a federal claim if it stems from violation of a "rule that is firmly established and regularly followed by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks and citations omitted).   Case law has long made clear that New York's contemporaneous objection rule is just such a "firmly established and regularly followed" rule. Id. at 77-78; see also Taylor v. Harris, 640 F.2d 1, 1-2 (2d Cir. 1981).

Further, it was not "exorbitant" for the Appellate Division to apply the contemporaneous objection rule to Petitioner's claim.   To the contrary, its invocation was well within the parameters of its routine and generally unquestionable application to bar review of unpreserved objections. See Richardson v. Greene, 497 F.3d 212, 218-19 (2d Cir. 2007) (recognizing adequacy of contemporaneous objection rule in the context of failure to raise objection to an alleged Batson violation).   Moreover, its application was entirely

consistent with and in furtherance of two of the rule's principal objectives: to ensure that "parties draw the trial court's attention to any potential error while there is still an opportunity to address it," Cotto, 331 F.3d at 245, and to prevent those who fail to do so from "sandbagging" the opposing party and the trial court on appeal. Garcia, 188 F.3d at 82 (citing Wainwright v. Sykes, 433 U.S. 72, 89, 97 S. Ct. 2497, 2508 (1977)); see also Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007) ("[D]emanding compliance with [§ 470.05(2)] serves a legitimate governmental interest in this case, that is to say, the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error."). Since defense counsel failed to bring to the court's attention the prosecutor's failure to offer any justification for the challenges to prospective jurors Aquino, Ortega, Scott, and Mota, the court never had an opportunity to remedy the omission. The contemporaneous objection rule's application here cannot be deemed "unyielding" or in "disser[vice to] any perceivable interest." Lee, 534 U.S. at 380, 122 S. Ct. at 887.

Accordingly, the state court's invocation of the contemporaneous objection rule is an independent and adequate ground to foreclose federal habeas review of this unpreserved claim. See Richardson, 497 F.3d at 219.

Because Petitioner's claim is both forfeited and procedurally barred, the Court recommends that the claim be dismissed.[6]

## III. **Petitioner's Excessive Punishment Claim**

Petitioner was sentenced as a second felony drug offender who had previously been convicted of a violent felony. Because he was convicted of a Class D felony, he faced a maximum prison sentence of four and one-half years and a minimum sentence of two and one-half years. See N.Y. Penal Law § 70.70(4)(b)(iii) (McKinney 2011). He received a determinate sentence of three years in prison, which was within the statutory parameters. Petitioner contends that his sentence should be reduced in the interests of justice because he merely sold his prescription pain medication to an overzealous undercover officer, he was not involved in the organized street drug trade, and he suffers from a variety of medical infirmities. (See Petition ¶ 14; Pet'r's App. Br. at 36-40.) This claim is not cognizable on federal habeas review and, in any event, is unexhausted and procedurally barred.

Although New York's Appellate Division has discretion to reduce a sentence in the interests of justice, see N.Y. Crim. Proc. Law § 470.15(3),(6)(b) (McKinney 2011), a federal habeas court considering a state-court conviction has no such power, and a claim that a sentence should be reduced in the interest of justice does not

---

[6] Petitioner has not asserted cause for the default or prejudice, and, therefore, cannot overcome the procedural default.

allege a violation of a federally protected right. See Townsend v. Burke, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948)) ("The sentence being within the limits set by the [state] statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977)(petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (internal citation omitted); Rustici v. Philips, 497 F. Supp. 2d 452, 469 (E.D.N.Y. 2007) ("Sentences that fall within the range prescribed by state law are not reviewable in a habeas proceeding. Moreover, [t]he assertion that a sentencing judge abused his or her discretion in sentencing is generally not a federal claim subject to review by a habeas court.") (internal citations and quotation marks omitted); Simmons v. McGinnis, No. 04 Civ. 6150 (PAC)(DF), 2006 WL 3746739, at *12 (S.D.N.Y. Dec. 19, 2006) ("To the extent Petitioner is claiming that the trial court abused its discretion in sentencing him to a particular term, such a claim is not reviewable").

Even if this Court were to liberally construe the Petition as asserting that the sentence imposed was cruel and unusual, in violation of the Eighth Amendment, such a claim could not succeed. First, before a federal court may consider the merits of a habeas

claim, a petitioner is required to exhaust his available state court remedies. See 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State. . . ."); accord Daye v. Att'y Gen'l of N.Y., 696 F.2d 186, 190-91 (2d Cir. 1982)(en banc).  To properly exhaust a habeas claim, a petitioner is required to present that claim to each available level of the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732-33 (1999) (holding that a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  Exhaustion requires that a habeas petitioner present his or her claim to the highest court of the state, including the factual and legal premises of the claim. See id. at 845, 119 S. Ct. at 1733.  Petitioner must also have fairly presented the federal nature of his claim to the state courts. See, e.g., Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 887-88 (1995) (per curiam).

Here, Petitioner did not exhaust a constitutional sentencing claim because he relied solely on state law authority in presenting the claim on appeal.  He cited no federal law or the United States Constitution in his brief on appeal to the Appellate Division. (See

28

Pet'r's App. Br. at 36-40.)  The Appellate Division concluded that it "perceive[d] no basis for reducing the sentence." Orr, 73 A.D.3d at 597, 902 N.Y.S.2d at 515.  Moreover, when Petitioner sought leave to appeal to the New York Court of Appeals, Petitioner did not even raise a sentencing claim, constitutional or otherwise. (See Rodriguez Decl. Ex. F.)

Petitioner cannot return to the New York state courts to raise an excessive sentence claim, because he is entitled to only one direct appeal. See Aparicio, 269 F.3d 78, 91 (2d Cir. 2001) (citing N.Y. Crim. Proc. Law § 450.10(1)); Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991). Petitioner's sentencing claim is therefore unexhausted and  procedurally defaulted.

A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that he is "actually innocent." See Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986).  Prejudice exists if there is a "reasonable probability" that the result of the proceeding would

have been different absent the alleged constitutional violation. See
Stickler v. Greene, 527 U.S. 263, 289, 119 S. Ct. 1936, 1952 (1999);
see also Torres v. Senkowski, 316 F.3d 147, 152 (2d Cir. 2003) (to
show prejudice, a petitioner must demonstrate that the alleged error
"worked to his actual and substantial disadvantage, infecting his
entire trial with error of constitutional dimensions.") (internal
quotation marks and citations omitted).     Neither cause nor
prejudice has been asserted or demonstrated here, and there has been
no showing of a miscarriage of justice.     Accordingly, Petitioner's
sentencing claim is barred from review.

In any event, Petitioner's claim fails on the merits. The
Eighth Amendment forbids the imposition of extreme sentences which
are "grossly disproportionate" to the offense for which a defendant
is sentenced. See Lockyer v. Andrade, 538 U.S. 63, 72-73, 123 S. Ct.
1166, 1173 (2003).   Generally, where the sentence imposed is within
the applicable statutory parameters and complies with state law,
there is no constitutional violation. See Dorsey v. Irvin, 56 F.3d
425, 427 (2d Cir. 1995); White v. Keane, 969 F.2d 1381, 1383 (2d
Cir. 1992) ("No federal constitutional issue is presented where .
. . the sentence is within the range prescribed by state law.");
Edwards v. Marshall, 589 F. Supp. 2d 276, 290-91 (S.D.N.Y. 2008);
Mercer v. Keane, No. 95 Civ. 1538 (JFK), 1997 WL 529031, at *5
(S.D.N.Y. Aug. 25, 1997); Thomas v. Senkowksi, 968 F. Supp. 953, 956

30

(S.D.N.Y. 1997); <u>Alvarez v. Scully</u>, No. 91 Civ. 6651 (PKL), 1993 WL 15455, at *12 (S.D.N.Y. Jan. 11, 1993), <u>aff'd</u>, 23 F.3d 397 (2d Cir. 1994).   In Petitioner's case, the sentence was clearly within the applicable statutory limits.   Thus, he presents no constitutional claim for this Court to review.

For all of these reasons, Petitioner's sentencing claim should be dismissed.

## IV. <u>Stay and Abeyance</u>

On October 9, 2011, approximately four months after the merits of the Petition had been fully briefed, Petitioner submitted a letter to the Court requesting that this matter be held in abeyance until he had a chance to return to state court to exhaust another claim.   The Court's Pro Se Office received notice of Petitioner's request on October 13, 2011, and it came to the Court's attention at some time in November.

On November 23, 2011, the Court issued an Order advising Petitioner that it was already considering the merits of the Petition and that the Supreme Court has cautioned the lower federal courts that the stay and abeyance of habeas proceedings is to be viewed warily.   In this case, Petitioner had not even identified the issue which he sought to have reviewed in the state courts. (<u>See</u> Order, dated Nov. 23, 2011).   Nevertheless, the Court directed Petitioner to submit, by no later than December 12, 2011, an

31

affidavit explaining what claim he was seeking to exhaust in the state courts, the basis for the claim, the reason why he failed to exhaust the claim prior to filing his habeas Petition, and why he waited until after there had been a response to the Petition to raise the issue. (See id.)

Petitioner's response was received on approximately December 11, 2011. In his response Petitioner explains that he wishes to exhaust a claim of ineffective assistance of appellate counsel. In essence, Petitioner contends that his appellate attorney was ineffective because he failed to argue on appeal that trial counsel was ineffective because he failed to properly preserve Petitioner's Batson claim.

### A. Applicable Law

Stay and abeyance is "available only in limited circumstances," such as when the one-year statute of limitations applicable to federal habeas actions poses a concern, or where "the district court determines there was good cause for the petitioner's failure to exhaust his claims in the state court." Rhine v. Weber, 544 U.S. 269, 277, 125 S. Ct. 1528, 1535 (2005). Moreover, a request to stay a habeas proceeding should not be granted where a petitioner's unexhausted claim is "plainly meritless," or where "a petitioner engages in abusive litigation tactics or intentional delay." Id., 544 U.S. at 278, 125 S. Ct. at 1535.

32

**B. Application**

Although the one-year limitations period for the instant Petition does not expire until January 25, 2012, if this action were to be dismissed in order to allow Petitioner to seek review of his ineffective assistance claim in the state courts, he would have less than three weeks to file such a proceeding. There is thus a likelihood that by the time Petitioner returned to this Court after exhausting his ineffective assistance claim, his Petition would be time-barred. The Court must, therefore, determine whether a stay of this proceeding has been justified.

The first issue we address is whether there is good cause for Petitioner's failure to exhaust his ineffective assistance claim prior to filing his Petition in this Court. Petitioner offers little justification for this delay. He argues primarily that he urged his appellate counsel to raise an ineffective assistance of counsel claim and, in the end, he "had no choice but to trust his lawyer's judgment even though he did not agree with it." (Pet'r's Aff. at 2.) He further argues that he was not aware that he could file a pro se supplemental brief on appeal. But this merely explains why he did not argue on direct appeal that his trial counsel was ineffective. Here the claim Petitioner seeks to raise is that his appellate counsel was ineffective. Petitioner knew that his appellate attorney had not raised an ineffective assistance of

trial counsel claim by December of 2009, when the appellate brief was filed.   And, he knew by May 20, 2010, when the Appellate Division affirmed his conviction, that because certain aspects of his Batson claim had not been preserved by trial counsel, they could not be considered on appeal.   Yet, this claim had not been asserted by appellate counsel.   Thus, when leave to appeal was denied by the New York Court of Appeals, on October 25, 2010, Petitioner could have instituted a coram nobis proceeding asserting that appellate counsel was ineffective.   Instead, he filed his habeas Petition in January 2011, Respondent moved to dismiss the Petition on June 10, 2011, and Petitioner filed a Reply on June 21, 2011.   Four months later, Petitioner requested a stay of this proceeding, without even stating what claims he wished to exhaust in the state courts; it was only in December 2011 that Petitioner first asserted that he seeks to exhaust an ineffective assistance of counsel claim.

Petitioner has not shown good cause for failing to exhaust his claim before filing his Petition and briefing the merits of the Petition.   There was no need to file the Petition before challenging the performance of appellate counsel, as Petitioner had an entire year remaining in which to exhaust his claim in the state courts.

Moreover, the delay in seeking a stay of this proceeding until the merits of the Petition had been fully briefed is precisely the sort of litigation tactic that the Supreme Court has warned against.

"Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings.  It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Rhines, 544 U.S. at 277, 125 S. Ct. at 1534 (internal citations omitted).  Accordingly, "stay and abeyance should be available only in limited circumstances" and "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. at 277, 125 S. Ct. at 1535.

The Court, therefore, denies Petitioner's request to stay this proceeding. See Johnson v. Kirkpatrick, No. 11 Civ. 1089(CM)(AJP), 2011 WL 3328643, at *13 (S.D.N.Y. Aug. 03, 2011) ("[Petitioner] has not shown the requisite good cause to receive a stay and abeyance"); Spurgeon v. Lee, No. 11 Civ. 600 (KAM), 2011 WL 1303315, at *3 (E.D.N.Y. March 31, 2011) ("Petitioner accordingly has failed to show good cause for his failure to exhaust both his prosecutorial misconduct claim and his ineffective assistance claim, and the court finds it would be an abuse of discretion to allow petitioner to now exhaust these claims in state court."); Johnson v. Fischer, No. 06 Civ. 4759 (RJS), 2010 WL 1779158, at *5 (S.D.N.Y. April 23, 2010) ("Because Petitioner can demonstrate neither good cause for failing

35

to exhaust this claim in state court nor that his claim is potentially meritorious, Petitioner's request for an abeyance is denied.").

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the Petition be denied and this action be dismissed with prejudice.  Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court recommends that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000), cert. denied, 531 U.S. 873, 121 S. Ct. 175 (2000).  This Court further recommends that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen(14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a), (e). Such objections shall be filed with the Clerk of the Court, with copies delivered to the chambers of the Honorable Richard M. Berman and to undersigned's chambers, Room 1660.  Any requests for an extension of time for filing objections must be directed to Judge Berman.  Failure to file objections will

result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S. Ct. 466, 475 (1985); <u>IUE</u> <u>AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Small v. Sec'y</u> <u>of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully Submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: January 23, 2012
       New York, New York

37